UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOIS GONZALES,

    Plaintiff,

v.                                                                                       Case No. 1:09-cv-463
                                                                                       Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

                                                      /

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI) and widow's benefits.

Plaintiff was born on November 16, 1954 (AR 49).[1] She is a high school graduate (AR 387). She alleged a disability onset date of September 20, 2003 (AR 49). Plaintiff had previous employment as a lawn care worker, factory worker and kitchen worker (AR 77-84). Plaintiff identified her disabling conditions as shoulder problems, right shoulder replacement involving two surgeries, pain in the left shoulder, diabetes, depression, and pain in the legs (AR 389-403). On January 19, 2006, Administrative Law Judge (ALJ) James F. Prothro, II, reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 13-20). Plaintiff appealed this decision to the federal district court. After concluding that the ALJ failed to properly assess plaintiff's credibility,

---

[1] Citations to the administrative record will be referenced as (AR "page #").

the court reversed and remanded the matter for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g). *See Gonzales v. Commissioner of Social Security*, No. 1:06-cv-687 (W. D. Mich.) (Judgment approving magistrate judge's report and recommendation, Feb. 28, 2008) (Miles, J.). On remand, ALJ Prothro held a hearing to review plaintiff's claims for DIB and SSI, as well as a recently filed application for widow's benefits (AR 887-932).[2] After reviewing plaintiff's claim *de novo*, the court entered a decision denying benefits on December 24, 2008 (AR 444-55). This decision, which was approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not

---

[2] On January 18, 2007, while the appeal of her DIB and SSI claims were pending in federal court, plaintiff filed an application for disabled widow's benefits (AR 444).

undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).

3

However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 20, 2003 (AR 444). The ALJ also found that plaintiff met the insured status requirements of the Social Security Act for DIB through September 30, 2008 (AR 445). With respect to the claim for widow's benefits, the ALJ determined that plaintiff met the prescribed period through February 29, 2004 (AR 445).[3] At step two, the ALJ found that plaintiff suffered from severe impairments of: right shoulder degenerative arthritis (status-post shoulder replacement surgery in February 2005); moderate degenerative disc disease of the low back; mild depression; and history of polysubstance dependence

---

[3] The ALJ determined that plaintiff's prescribed period for purposes of receiving widow's benefits began on May 26, 1992, when the wage earner died; that she was entitled to survivor's benefits through February 1997; and that the prescribed period (i.e., 7 years after the widow was last entitled to survivor's benefits) ended on February 29, 2004 (AR 445). Thus, in order to qualify for disabled widow's benefits, plaintiff needed to establish that her disability began on or before February 29, 2004 (AR 445).

(AR 447). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 448).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to perform light work with the following limitations:

> She is able to lift and/or carry 20 pounds occasionally and 10 pounds occasionally, stand and/or walk six hours of an eight-hour workday. She can only use her right arm as a guide for the left and can lift eight to ten pounds with the right arm as long as she keeps it close to her body. She can do no pushing or pulling with her right arm but has an unlimited ability to use her left arm for pushing or pulling. She can occasionally climb ramps and stairs, balance, stoop, knee [sic], crouch, and crawl and can never climb ladders, ropes and scaffolds. She should avoid concentrated exposure to vibration and workplace hazards such as machinery and heights. She retains the capacity for the simple, routine tasks required of unskilled work.

(AR 450).

The ALJ also found that plaintiff was unable to perform her past relevant work (AR 453). At the fifth step, the ALJ determined that plaintiff could perform a significant number of jobs in the national economy (AR 454). Specifically, plaintiff could perform approximately 25,500 jobs in the regional economy involving light work: gate attendant (2,200 jobs); line attendant (4,800 jobs); and host/hostess (18,500 jobs) (AR 454). Accordingly, the ALJ determined that plaintiff was not disabled under the Social Security Act for purposes of DIB, SSI or widow's benefits (AR 455).

## III. ANALYSIS

Plaintiff has raised three issues on appeal:

### A. The ALJ had insufficient legal justification to reject plaintiff's credibility.

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). An ALJ's credibility determinations are accorded deference and not lightly discarded. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). "This Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F2d 383, 387 (6th Cir. 1984). On appeal, this court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [the claimant] are reasonable and supported by substantial evidence in the record." *Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003).

The Commissioner determines the extent to which a claimant's symptoms affect her capacity to perform basic work activities in pertinent part as follows:

> We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 C.F.R. § 404.1529(c)(4). The factors to be considered in determining a claimant's credibility include: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment, other than medication, received for relief of pain or other symptoms; any measures used to relieve pain or other symptoms; and, other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii).

Since this matter was remanded to re-evaluate plaintiff's credibility, the court will quote the ALJ's revised credibility determination at length:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The claimant has not worked since her alleged disability onset date. Such a cessation of work lends support to her contention that she has been disabled since that date. The undersigned must, however, consider the claimant's credibility concerning her symptoms and limitations in view of all the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p.
>
> The objective medical findings of record do not support the debilitating frequently [sic] and intensity of symptoms that the claimant has contended. While the claimant has impairment in use of her right upper extremity, recent physical examinations have disclosed few other positive musculoskeletal findings. An August 2007 x-ray study has documented only moderate degenerative disc disease of her lumbar spine with no nerve root impingement (Exhibits 27F/20, 31F/18).
>
> In terms of the claimant's alleged debilitating depression, the undersigned notes that the claimant refused counseling after her treating medical sources at Hackley Community Care had strongly recommended it (Exhibit 28F/1). Moreover, treating medical source records have persistently revealed that upon mental status examination the claimant is alert, cooperative, well groomed, and oriented times four (Exhibits 28F, 31F).

7

> Since her February 2005 right shoulder surgery, the claimant has had only conservative treatment, consisting of medication usage and physical therapy, for her alleged overwhelming pain. She has been advised to do gentle stretching, soft tissue massage, and the application of heat or ice as necessary (Exhibit 31F/4). Of interest is the fact that the medical personnel with the Hackley Community Care Center have determined that the claimant's overall condition can be effectively monitored and managed by a physician assistant and that the immediate, hands-on requirement of a doctor is not necessary (Exhibit AC2/29).
>
> Moreover, the medical evidence reflects that the claimant's pain is appropriately controlled with her prescribed treatment. Hackley Community Care Center records disclose that the claimant has good response to her treatment modalities. In May 2007 Ms. Schram noted that the claimant "does not appear to be in pain." Hackley Community Care Center records of October 2007 also document that the claimant was happy with the physician assistant's recommended treatment and that she had adequate pain control of 5/10 with medication usage (Exhibit 28F). In February 2008 the claimant declined behavioral health therapy (Exhibit 28F/33). In November 2008 the claimant reported that she felt good overall. Upon physical examination it was noted that she appeared well (Exhibit 31F/10).
>
> The claimant's pain medications include over-the-counter Ibuprofen, Flexeril, and Norco (Exhibit 22E/5). The claimant's representative has suggested that the claimant has side effects from the mix of "heavy medication regimen" that she is on (Exhibit 32F/10). Hackley Community Care Center office notes, however, fail to substantiate the contention (Exhibits 28F, 31F).
>
> The claimant's daily activities support a conclusion that she would be capable of a [sic] limited light work. The claimant testified that she lives with a friend. She does household chores, shops for groceries, and plays Bingo. She stated that she does not sweep or vacuum (Testimony and Exhibits 5E, 10E, 18E). The claimant's friend, Sandra Lutz, has made similar statements (Exhibits 8E, 18E, 19E).

(AR 451-52).

Plaintiff contends that the reasons cited by the ALJ in opposition to her credibility "mischaracterize the record," "cherry pick the evidence" and do not "disclose an *inconsistency* with other *substantial* evidence." Plaintiff's Brief at p. 16 (emphasis in original). Plaintiff raises the following objections. First, the fact that plaintiff was "not counseling more" for depression and the lack of such treatment is lack of corroboration, not an inconsistency in the evidence. *Id.* at p.

8

12. Second, in a similar argument, plaintiff contends that her conservative orthopedic treatment "is lack of corroboration, and not the inconsistency that is needed before the ALJ may reject a claimant's reported symptoms and limitations." *Id.* at p. 13. Third, the ALJ's citation of moderate lumbar degeneration indicates that the ALJ is requiring a more severe condition than needed under the regulations, i.e., that the underlying medical condition be capable of producing the alleged symptoms. *Id.* Fourth, the ALJ merely cites "snippets" in support of his finding that plaintiff had good pain control. *Id.* at pp. 13-15. Fifth, the ALJ's citation to plaintiff's activities of daily living (ADL) "is so incomplete as to be misleading" and that plaintiff's ADLs do not support the ability to do light work. *Id.* at pp. 15-16.[4]

After reviewing the record, the court concludes that there is no compelling reason to disturb the ALJ's credibility finding. *See Smith*, 307 F.3d at 379; *Casey*, 987 F.2d at 1234. The court disagrees with plaintiff's various characterizations of the ALJ's decision (e.g., cherry picking the evidence, mischaracterizing the record, and "so incomplete as to be misleading"). The ALJ discussed, at length, the inconsistencies between plaintiff's claims and other evidence of record. Plaintiff's alleged errors essentially ask this court to re-weigh the evidence with respect to portions of plaintiff's medical history and then determine whether it agrees (or disagrees) with the ALJ's credibility determination as to that particular event. In short, plaintiff is asking this court to perform a *de novo* review of the record and re-evaluate her credibility. It is beyond the scope of this court's review to perform such a review. *See Jones*, 336 F.3d at 476; *Garner*, 745 F2d at 387.

Substantial evidence supports the ALJ's decision, which sets forth a reasonable explanation for discrediting plaintiff's testimony regarding the severity of her medical condition and

---

[4] The court notes that defendant did not provide a detailed response to plaintiff's five separate attacks on the ALJ's credibility determination.

resulting limitations. *See Jones*, 336 F.3d at 476. The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision. *Willbanks*, 847 F.2d at 303. As the court explained in *Mullen v. Bowen*, 800 F.2d 535 (6th Cir. 1986):

> The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen*, 800 F.2d at 545, quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984). Plaintiff's claim regarding the ALJ's credibility determination should be denied.

### B. The ALJ had insufficient legal justification to reject PA Schram's opinion.

Plaintiff contends that the ALJ improperly rejected the opinions expressed by PA Karel Schram. The ALJ addressed her opinions as follows:

> Karel Schram, a certified physician assistant, has offered the opinion that the claimant would be unable to hold gainful employment (Exhibits 31F/16/ 32F). Ms. Schram's observations of the claimant's objective presentation are pertinent from a third-party standpoint. Ms. Schram's opinions are not to be given the controlling weight an acceptable medical source, such as a treating physician. Ms. Schram has stated that it is a computer glitch that her notes show that the claimant has a "full range of motion, all joints" and that the claimant actually has decreased range of motion. This inconsistency and the relatively normal findings upon physical examination throughout the medical reports of record diminish Ms. Schram's opinion concerning the claimant's inability to hold gainful employment. The undersigned, accordingly, does not give any weight to the physician assistant's opinions.

(AR 452).

Plaintiff contends that "the ALJ violated the rule that there must be a good reason to reject the opinion of even a nonphysician treator [sic]." Plaintiff's Brief at 18. Contrary to plaintiff's contention, there is no such rule. An ALJ must articulate good reasons for not crediting

10

the opinion of a "treating source." *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007); *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004). Under the regulations, a "treating source" is defined as a claimant's "own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502. *See* 20 C.F.R. § 404.1513(a) (defining "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists who can provide evidence to establish an impairment).

Unlike a licensed physician, Ms. Schram's opinions are not entitled to controlling weight. A physician's assistant, is not an "acceptable medical source," but rather is considered to be an "other" medical source. *See* 20 C.F.R. §§ 404.1502, 404.1513(d)(1).

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. See 20 CFR 404.1513(a) and 416.913(a). Second, only "acceptable medical sources" can give us medical opinions. See 20 CFR 404.1527(a)(2) and 416.927(a)(2). Third, only "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. See 20 CFR 404.1527(d) and 416.927(d).

SSR 06-03p.[5]

Nevertheless, SSR 06-03p states that the Commissioner should evaluate the opinions expressed by other medical sources (such as physician's assistants and nurse practitioners):

> These regulations provide specific criteria for evaluating medical opinions from "acceptable medical sources"; however, they do not explicitly address how to

---

[5] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).

consider relevant opinions and other evidence from "other sources" listed in 20 CFR 404.1513(d) and 416.913(d). With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p.

Here, the ALJ evaluated PA Schram's opinion as required under SSR 06-03p and set forth a reasonable explanation for not giving any weight to that particular opinion. Even if the ALJ had not provided such an explanation for rejecting PA Schram's opinion, this action would not have constituted an error. Because PA Schram was neither an "acceptable medical source," nor a "treating source" under the regulations, the ALJ was not required to articulate "good reasons" for the weight assigned to her opinion under the reasoning set forth in *Smith* and *Wilson*. *See* 20 C.F.R. §§ 404.1502; 404.1513(a) and (d); 404.1527(a)(2) and(d); and SSR 06-03p. Accordingly, plaintiff's claim should be denied.

### C. The ALJ erroneously failed to find that plaintiff's left shoulder and diabetes were "severe" impairments.

Plaintiff contends that the ALJ should have found that her left shoulder and diabetes were severe impairments at step two of the sequential evaluation. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id.* An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id.*

Here, the ALJ found that plaintiff suffered from severe impairments of: right shoulder degenerative arthritis (status-post shoulder replacement surgery in February 2005); moderate degenerative disc disease of the low back; mild depression; and history of polysubstance dependence (AR 447). The ALJ continued with the remaining steps of the disability determination, which involved consideration of plaintiff's symptoms, including those caused by non-severe impairments (AR 450-53). Accordingly, the ALJ's failure to find additional severe impairments is not error requiring reversal. *See Maziarz*, 837 F.2d at 244.

In addition, plaintiff's brief raises a separate issue when she contends that the ALJ failed to include limitations observed by a DDS examiner (Dr. Sheill) that plaintiff suffered from "[d]iabetes with inadequate control and end organ damage" and limitations on her use of foot pedals (i.e., only occasional use) due to polyneuropathy (AR 834-45). The ALJ's review of Dr. Sheill's report did not reference the diagnosis of diabetes, polyneuropathy, limitations on foot controls (i.e., only occasional use defined as 1/3rd of the time) and "painful dysthesias and numbness" in her feet (AR 449, 834-45). Rather, the ALJ characterized Dr. Sheill's findings as "minimal sensory abnormalities" and determined that "[n]o treating or examining medical source has related that the claimant has significant limitations because of diabetic, hypertensive, or hypolipidemia conditions" (AR 448). The ALJ has given reasons for rejecting the limitations observed by Dr. Sheill.

Furthermore, the ALJ addressed the issue of plaintiff's limited ability to operate foot pedals when he posed a hypothetical question to the VE assuming limitations as set forth by Dr. Sheill (AR 921-23).[6] The VE testified that a person with those limitations could perform the 25,500 identified positions as a gate attendant, line attendant and host/hostess (AR 923). Even if the ALJ erred in his review of Dr. Sheill's opinion with respect to the limitations posed by diabetes (i.e., limited ability to operate foot pedals), the VE's testimony on that issue is substantial evidence which supports the ALJ's decision denying benefits. Given this testimony, there is no reason to order yet another remand in this matter. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("[n]o principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be affirmed.

Dated: June 3, 2010                                /s/ Hugh W. Brenneman, Jr.
                                                   HUGH W. BRENNEMAN, JR.
                                                   United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[6] The ALJ refers to the doctor as "Dr. Shield" (AR 922-23).